Paul W. OLDHAM, Plaintiff–Appellant,

v.

Togo D. WEST, Jr., Secretary of the Army, Defendant–Appellee.

No. 94–2809.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1995.

Decided Feb. 16, 1995.

---

Charles R. Oldham, St. Louis, MO, argued, for appellant.

Herbert L. Harry, Dept. of Army, Arlington, VA, argued, for appellee.

Before HANSEN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WILL,* Senior District Judge.

WILL, Senior District Judge.

## SUMMARY OF THE CASE

The plaintiff-appellant, Paul W. Oldham, alleges that he was subjected to retaliatory adverse employment treatment because he testified early in 1987 on behalf of a fellow employee, a black female, at an EEOC hearing. He was an employee of the Army Aviation Troop Command (ATCOM) having been hired by the Aviation Systems Command (AVSCOM), now known as ATCOM, in March 1982. In 1983, he received a two grade promotion, and a temporary promotion

* The HONORABLE HUBERT L. WILL, Senior United States District Judge for the Northern District of Illinois, Eastern Division, sitting by designation.

in January 1986 which was made permanent that fall.

Loistine Stewart, a black female employee, had filed an EEO complaint charging discrimination in the failure to promote her and asked plaintiff to testify on her behalf at a hearing scheduled for April, 1987. He agreed to do so and his name appeared on a list of her witnesses given to the management in March 1987.

Shortly thereafter, plaintiff was called out into the hall by his supervisor, Don Horlacher, and they had a conversation the exact substance of which is in dispute. It is undisputed, however, that regardless of exactly what was said, Horlacher indicated his substantial displeasure with plaintiff's testifying as a witness at Ms. Stewart's hearing.

Until that time, plaintiff had not only received the several promotions previously referred to but apparently was very well regarded by his superiors. Plaintiff alleges that very shortly thereafter, however, a series of retaliatory adverse employment actions were initiated against him by Horlacher and other supervisory employees. Co-employees noted a dramatic change in the attitude of management personnel towards him.

On March 30 and 31, 1987, plaintiff was charged with a security violation which, after a grievance procedure, was dropped. Although a rating of "exceptional" was expected to be recommended by his rater, it was changed to "fully successful." Thereafter, he was in effect demoted by having his responsibilities reduced and on July 7 was detailed away from his previous position and placed on temporary duty.

Plaintiff was then accused of sexual harassment in a complaint by the Division Chief who originally stated that the harassment had been reported to him and he had personally observed it. He later acknowledged that he had not seen any harassment, and the secretary in question stated that another male employee had suggested the complaint although she never used the term "sexual harassment."

Horlacher, in March 1987, charged plaintiff with forging the signature of his former supervisor on a rating. When questioned, the supervisor whose name Oldham was charged with having forged stated that the signature was his and not a forgery. Oldham was also charged with being disruptive at a meeting, which he had been instructed to attend, when a colonel ordered him to leave. He and several witnesses recollect that he left quietly. A supervisor made seven pencilled disciplinary action entries in his personnel records. When Oldham filed a union grievance, they were all erased. He failed to receive any of several available temporary promotions but instead was in effect demoted by being given a series of temporary details. In January 1988, the Army permanently reassigned him from the Readiness Directorate to the Maintenance Directorate.

On September 18, 1987, April 19, 1988, and March 7, 1989, Oldham filed EEO formal complaints alleging the various reprisals referred to above. The U.S. Army Civil Appellate Review Agency (USACARA) assigned investigators to hold fact-finding conferences on the three grievances. The investigators found "no reprisals."

Oldham then requested that an EEOC Administrative Law Judge hear the three EEO complaints he had filed which were consolidated for hearing. After a two-day hearing at which 13 individuals testified, the ALJ made credibility determinations and found that Oldham had established a prima facie case as to some of the alleged retaliations but not others, that the agency had articulated legitimate business reasons for its actions, but that Oldham had established by a preponderance of the evidence that the articulated reasons were more likely than not pretextual with respect to those actions as to which he had established a prima facie case. The ALJ recommended that Oldham be reassigned to his prior position, that the agency cease and desist from further retaliatory acts against him and that he be paid his reasonable attorney's fees.

The Army accepted the ALJ's findings which were in its favor, rejected those which were not and issued a final "no reprisal" decision. Oldham appealed the Army's rejection of the ALJ's recommendations to the EEOC which affirmed the Army's action. Thereafter, Oldham filed this civil action.

Subsequently, Oldham filed additional reprisal complaints on January 22, 1990, March 6, 1990, and May 7, 1990. The Army also investigated them and made findings of "no reprisal." They were added to this action by an amended complaint.

The case was assigned to a magistrate judge pursuant to stipulation. The defendant, the Secretary of the Army, filed a motion for summary judgment. In a 33–page opinion, the judge reviewed the record of the two-day hearing before the ALJ and the documents filed in support of and in opposition to the motion for summary judgment and concluded "Plaintiff has simply failed to meet his burden of proving that any of defendant's personnel discriminated against him. Defendant is accordingly entitled to summary judgment on plaintiff's complaint."

Oldham has appealed the summary judgment dismissal of his complaint alleging that the judge erred in ruling that there was no genuine dispute about any material fact with respect to his claims of reprisals because he had failed to carry his burden of establishing retaliation. We agree that, under the circumstances, summary dismissal of the complaint was erroneous and reverse.

## DISCUSSION

■ We note first that, on a motion for summary judgment in an EEO case, as in others, the ultimate burden of proof is on the movant, here the defendant, to establish that there are no material facts in dispute and that, as a matter of law, the movant is entitled to judgment. Fed.R.Civ.P. 56(c); *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, we review the facts and possible inferences from those facts in the light most favorable to the non-moving party. *Id.*

■ "Summary judgment is appropriate only in 'those rare instances where there is no dispute of fact and where there exists only one conclusion.'" *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), quoting *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991). As we noted in *Crawford,* discrimination cases are frequently not supported by direct evidence. Because plaintiffs must often rely on inferences, and because courts should not grant summary judgment unless the evidence could not support any reasonable inference for the non-movant, we cautioned that "summary judgment should seldom be used in employment-discrimination cases." 37 F.3d at 1341. This is a classic example of such a case.

■ As previously indicated, the judge here held that the plaintiff, the non-movant, had failed to meet his burden of proving that any of defendant's personnel had discriminated against him. In the course of reaching this decision, the judge correctly set forth the standard for summary judgment and the burden-shifting test used to establish retaliatory treatment. The judge discussed the various allegations made by the plaintiff and the defendant's rebuttal evidence. The judge then concluded that Oldham had shown that he had engaged in protected activity and had proven that he had experienced adverse employment action against him, but had failed to prove any causal connection between the two. In coming to this conclusion, the court discussed the evidence presented by both the plaintiff and the defendant, noted the differences, and concluded that plaintiff had failed to establish causation by a preponderance of the evidence.

■ The fundamental error in the judge's analysis is that, on a motion for summary judgment, the plaintiff need not prove his case by a preponderance of the evidence, but merely need prove that a genuine issue exists as to one or more material facts. The plaintiff's affidavit here presented evidence that all of the adverse employment decisions were made by officials who were aware of his EEO testimony and that these decisions may have been made in retaliation for that testimony. The defendant's affidavits presented evidence to the contrary. By accepting the defendant's version of the facts, the judge necessarily resolved any credibility issues in favor

of all of the defendant's witnesses, and "such a credibility determination is inappropriate in ruling on a motion for summary judgment." *Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir.1990).

The fact that the EEO administrative law judge came to opposite conclusions on many of the issues presented to the magistrate judge is further evidence that the plaintiff has established genuine issues of material fact on those claims. The administrative law judge, who saw and heard the 13 witnesses, found that the plaintiff had established a prima facie case of retaliation as to harassment and reassignment but not as to his other complaints, that the defendant's representatives had articulated some legitimate business reasons for their actions but, the plaintiff, by a preponderance of the evidence, had established that those reasons were probably pretextual. The ALJ made credibility determinations in weighing the evidence. Obviously, there were a number of material facts which were in dispute as to some of which the ALJ found in plaintiff's favor while as to others the findings favored the defendant and his representatives.

The magistrate judge, on the other hand, after reviewing the affidavits and the transcript but without any firsthand observation of the witnesses or the evidence, found that the plaintiff had failed to prove by a preponderance of the evidence that he had been discriminated against, the ultimate issue in the case. But on a motion for summary judgment, the non-movant need establish only that there are disputed material facts which, if found in his favor, would entitle him to judgment, not that he is entitled to judgment. Clearly, there are a number of those here both as to whether the various adverse actions taken against plaintiff were retaliatory or whether the asserted legitimate business justifications for such actions were pretextual. The ALJ and the magistrate judge reached opposite conclusions as to a number of them. It is particularly inappropriate in an employment-discrimination case to shift the ultimate burden of proof from the summary judgment movant to the respondent, as the magistrate judge did here.

The magistrate judge may also have erred by giving undue weight to some of the conclusions reached during the various EEO hearings. In her decision, the judge discussed the findings made during the EEO proceedings and apparently accepted some of those findings as conclusive while rejecting others. In deciding a public sector Title VII action, a court may consider the administrative record as part of the evidence before it. However, the statute clearly contemplates and the courts have held that, if they can establish a prima facie case, complainants are entitled to a trial de novo notwithstanding the results of prior administrative proceedings. *See Chandler v. Roudebush,* 425 U.S. 840, 863–64, 96 S.Ct. 1949, 1960–61, 48 L.Ed.2d 416 (1976). The statute does not contemplate that the district court will serve as an appellate court, reviewing the record of any previous administrative hearings and, on a summary judgment motion, affirm or reverse the EEOC's findings. Thus, to the extent that the magistrate judge relied on the decisions rendered during the EEO hearings instead of considering the issues de novo, that reliance was in error.

While summary judgment is appropriate if the movant establishes that there are no genuine issues of material fact as to each element of the action, and is entitled, as a matter of law, to a judgment and the respondent fails to show that there are one or more such issues, this clearly is not such a case. Here, in his affidavit and by the testimony of witnesses before the ALJ, plaintiff presented facts which at the least raised an inference that all of the adverse actions taken against him were retaliatory. The time proximity alone between Horlacher's expressed opposition, Oldham's testifying, and the series of alleged retaliatory actions raises such an inference. While defendant's affidavits rebutted the plaintiff's assertions, on summary judgment judges must resolve all facts and inferences from the facts in favor of the non-moving party. Since Oldham established genuine issues of material fact on each of the elements necessary to prove a case of retaliatory discrimination, summary judgment should not have been granted.

For all of the foregoing reasons, we reverse the grant of summary judgment dismissing the plaintiff's complaint and remand the case to the district court for appropriate further proceedings.